**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael E. Carbajal, a single man; and Mary E. Carbajal, a widow, <br><br> Plaintiffs, <br><br> vs. <br><br> David A. Dorn and Jane Doe Dorn, husband and wife; Dorn Agency, Inc., an Arizona corporation; Liberty Life Insurance Co., a South Carolina corporation; and Danny Esquer Carbajal, a single man, <br><br> Defendants. | No. CV09-0283-PHX-DGC <br><br> **ORDER** |

This action concerns life insurance policies covering Michael Carbajal, a retired boxer, and Mary Carbajal, Michael's mother. The policies were issued by Liberty Life Insurance Co. ("Liberty") and Jackson National Life Insurance Company ("Jackson"). David Dorn and the Dorn Agency, Inc. (collectively, "Dorn") were the insurance agents for the purchase of the policies.

Plaintiffs filed suit against Dorn and Liberty in state court on January 8, 2009. Plaintiffs allege that Dorn conspired with Danny Carbajal, Michael's brother and Mary's son, to fraudulently change ownership and beneficiary designations of the policies. The complaint asserted a breach of fiduciary duty claim and a negligence claim against Dorn, and sought reformation of the policies to reflect Michael and Mary Carbajal as the true policy owners with their choice of beneficiaries. Dkt. #1 at 10-19. The case was removed to this

Court based on federal question jurisdiction under ERISA. *Id.* at 1-5. Plaintiffs have filed an amended complaint asserting the same claims against Dorn and Liberty and adding Danny Carbajal as a defendant. Dkt. #103.

Dorn has filed a motion for partial summary judgment, arguing that Michael Carbajal's claims are barred by the doctrine of judicial estoppel and the statutes of limitations. Dkt. #37. Liberty has joined the motion. Dkt. #40. The motion is fully briefed. Dkt. ##57, 70. For reasons that follow, the motion will be denied.[1]

**I.  Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II.  Defendants' Motions.**

Michael Carbajal asserts claims relating to a $100,000 policy issued by Jackson in 1990 (Dkt. #103 ¶ 32) and a $1.3 million policy issued by Liberty in 1993 (*id.* ¶ 21). The Liberty policy was changed in or around April 1994 (*id.* ¶¶ 22-27), and the changes to the Jackson policy were made in January 2001 (*id.* ¶¶ 34-39). Michael alleges that due to fraudulent concealment on the part of Danny Carbajal, he was not able to discover the

---

[1] Dorn's request for oral argument is denied because the parties have fully briefed the issues and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

changes until Danny's fraudulent behavior was exposed in his 2007 criminal proceedings. *Id.* ¶¶ 20, 48-50. Michael also claims that he did not have reason to suspect Dorn's involvement in the alleged fraud until he subpoenaed records from Dorn in January 2008. Dkt. #58 ¶ 44.

### A. Judicial Estoppel.

Defendants seek summary judgment on the ground that Michael is judicially estopped from claiming an interest in the insurance policies. In financial affidavits filed in divorce proceedings and a criminal case, Michael disclaimed as an asset any "insurance policy cash surrender value." Defendants contend that those avowals are inconsistent with the alleged interest in the policies in this case, and that Michael should not be allowed to benefit from his change in positions. Dkt. ##37 at 5-11, 40 at 1-2.

Judicial estoppel "'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Its purpose is to protect the integrity of the judicial process by "'by prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]'" *Id.* (citations omitted). This Circuit has made clear that "judicial estoppel 'seeks to prevent the *deliberate* manipulation of the courts,' and therefore should not apply 'when a party's prior position was based on inadvertence or mistake.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *Hefland v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997)) (emphasis in *Ibrahim*). Judicial estoppel is appropriate only when "a party's position is 'tantamount to a knowing misrepresentation to or even fraud on the court.'" *Johnson v. Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998) (citation omitted).

Michael has provided a declaration stating that he has never lied to any court, including this one. Dkt. #58-1 ¶ 4. He further states that he never received any correspondence from Liberty, Jackson, or Dorn (*id.* ¶¶ 15, 19, 21-23), that his older brother Danny Carbajal managed his boxing career and handled all of his financial affairs (*id.* ¶¶ 10, 12, 17), that he trusted Danny and saw him as a father figure (*id.* ¶¶ 6-8), and that when he was required to disclose financial information in divorce proceedings, Danny promised to

1 provide that information on his behalf (*id.* ¶¶ 17, 26).

Dorn argues that Michael's declaration lacks detailed facts and therefore is insufficient to create a genuine issue of fact. Dkt. #71 at 1-2. The Court does not agree. The declaration provides a sufficient factual basis for the trust and confidence Michael placed in Danny, his belief that Danny was properly managing his career and financial affairs, and his statement that he has never lied to a court. Michael's testimony is corroborated by a financial affidavit filed in the 2002 divorce case. Michael stated in that affidavit that he was unable to provide tax information because his "brother has [the] forms." Dkt. #38-2 at 25. Michael further testified in the divorce proceedings that he had no knowledge or understanding regarding any of his financial information because "his brother always managed his fighting career and all of the prize money earned[.]" Dkt. #38-3 at 7.

The Court cannot, as a matter of undisputed fact, conclude that any change in position on the part of Michael was based on "chicanery" rather than inadvertence or mistake. *Johnson*, 141 F.3d at 1369; *see Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury."); *Sec. & Exch. Comm'n v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue"). The Court will deny summary judgment with respect to Defendants' judicial estoppel argument. *See id.* (reversing summary judgment where the party's positions were not "so inconsistent that they amount to an affront to the court"); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000) (reversing summary judgment where there was no evidence of intentional misrepresentation); *Stevens Tech. Servs., Inc. v. SS Brooklyn*, 885 F.2d 584, 589 (9th Cir. 1989) (finding judicial estoppel inappropriate where the party was not playing "fast and loose" with the courts).

Dorn asserts that Michael cannot simply pretend that the insurance policies did not exist. The doctrine of judicial estoppel would serve no useful purpose, Dorn contends, if litigants were permitted to rely on a defense of "deliberate ignorance." Dkt. #70 at 8. But the evidence, construed in Michael's favor as required on summary judgment, shows that

1 Michael reasonably relied on information provided by Danny when completing the financial
2 affidavits and did not intentionally mislead the courts.

Dorn asserts in his reply brief that Michael's actions fit into the very "scheme" testified to by Mary Carbajal, that is, an alleged scheme to fraudulently transfer Michael's assets into her name. Dkt. #70 at 7. Mary testified that she signed documents for Michael's protection "so nobody could take away the money he had." Dkt. #71-1 at 36. She further testified, however, that Michael did not know she was signing the papers for that purpose, and she "just told Michael that Daniel had come over and [she] had signed some papers for his protection." *Id.* This testimony corroborates Michael's claim that his financial affairs were handled by Danny without Michael's knowledge. *See* Dkt. #70 at 7 (noting that "Michael's assets were moved around *by Danny*") (emphasis added).

### B.     Statute of Limitations.

Defendants contend that Michael's claims, brought in January 2009, are time barred. Dkt. ##37 at 11-13, 40 at 2-3. The claims for breach of fiduciary duty and negligence asserted against Dorn are subject to a two-year limitation period. A.R.S. § 12-542(1); *see CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 7 P.3d 979, 981 (Ariz. Ct. App. 2000). The reformation claim asserted against Liberty is predicated on fraud and therefore is subject to a three-year limitation period. A.R.S. § 12-543(3); *see Long v. City of Glendale*, 93 P.3d 519, 526 (Ariz. Ct. App. 2004). Under the common law "discovery rule," a claim will accrue when either "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. Of Am.*, 898 P.2d 964, 966 (Ariz. 1995). "Fraud practiced to conceal a cause of action will prevent the running of the statute of limitations until its discovery." *Walk v. Ring*, 44 P.3d 990, 999 (Ariz. 2002); *see* A.R.S. § 12-543(3).

The parties agree on the length of the limitation periods, but disagree on when the claims accrued and whether they were tolled. Defendants contend that Michael's claims accrued under the discovery rule no later than 2002. Dkt. ##37 at 12-13, 40 at 3. Defendants assert that each time Michael was required to disclose his financial information in prior

1  litigation, he was required to exercise due diligence into the existence of any insurance
2  policies. Dkt. ##37 at 12-13, 40 at 2-3. Defendants note that in August 2002, state Judge
3  Richard Gama specifically ordered Michael to provide a full accounting of his assets given
4  that he had access to the person who "managed his financial records and resources
5  throughout his fighting career." Dkt. #38-3 at 8. Defendants contend that had Michael
6  exercised any diligence, he would have discovered the changes to the Liberty and Jackson
7  policies, at the latest, in 2002. Dkt. ##37 at 12-13, 40 at 3.

Michael argues that he exercised reasonable diligence under the circumstances. Dkt. #57 at 12. He further argues that Danny fraudulently concealed the changes to the policies, and he was able to discover the changes only when Danny's fraudulent behavior came to light during his criminal proceedings in 2007. *Id.*

Construing the evidence in Michael's favor, the Court finds that there are triable issues as to when his claims accrued under the discovery rule and whether they were tolled until 2007 due to fraudulent concealment. Michael has presented evidence that he had no relevant financial documents himself, and that Danny was his only source of information when it came to providing financial affidavits to the courts. Dkt. #58-1 ¶¶ 10, 12-14, 17-8, 25. A jury reasonably could conclude that turning to Danny for financial information was not only reasonable, but necessary.

Dorn disputes that Danny was Michael's sole source of information, asserting that Michael "could have asked Dorn, Liberty Life, Jackson National, his financial planners, his attorneys, or anyone else about his assets." Dkt. #71 ¶ 41. Resolution of this factual dispute is not appropriate on summary judgment.

With respect to Judge Gama's order – that Michael was to obtain financial information from the person who "managed his financial records and resources throughout his fighting career" (Dkt. #38-3 at 8) – Michael has testified that he told Danny about the order and he stated, "Don't worry about it, Michael, I'll take care of it." Dkt. #58-1 ¶ 26. Danny then convinced Michael to reach an out-of-court settlement, thereby avoiding the accounting required by Judge Gama. *Id.* ¶ 27. Danny advised Michael that "letting lawyers sift through

eight years of detailed financial records would cost a lot of money and produce no benefit to anyone." *Id.* Michael claims that Danny engineered the settlement in an effort to fraudulently conceal his wrongdoing. Dkt. #57 at 13-14. A jury reasonably could agree with Michael, particularly given that Danny currently is serving a prison sentence for engaging in fraudulent schemes against another family member. *See* Dkt. ##38 ¶ 36, 38-3 at 37-47; *State v. Carbajal*, No. CR2005-012726-002 DT (Ariz. Super. Ct. Feb. 21, 2008).

Dorn asserts that Plaintiff knew of the possibility of wrongdoing as far back as 1992, when his father stated that Danny had been stealing from him. Dkt. ##37 at 13, 38-3 at 41. But the first change to insurance policies was made in 1994, more than a year after Danny was accused of stealing. Michael's claims clearly could not have accrued, under the discovery rule or otherwise, in 1992.

Moreover, Michael has testified that he confronted Danny in front of their parents, asking outright whether Danny was stealing from him. Dkt. #58-1 ¶ 28. Danny assured Michael that he was not, and promised Michael that he would never do anything bad to him and would always take care of him. *Id.* ¶ 29. Michael believed Danny and continued to trust him. *Id.* It is significant that Danny "did not just remain silent but made an affirmative statement that had done nothing wrong." *Walk*, 44 P.3d at 1000. A triable issue exists as to whether Danny fraudulently concealed any wrongdoing on his part. *See id.* at 1001.

In summary, Defendants have presented no evidence that Michael had actual knowledge of the changes to the Liberty and Jackson policies before 2007. Nor has Dorn shown as a matter of undisputed fact that Michael had reason, prior to January 2008, to suspect Dorn's involvement in the alleged fraud. Triable issues exist as to when Michael's claims accrued under the discovery rule and whether the limitation periods were tolled due to fraudulent concealment. The Court will deny summary judgment with respect to Defendants' statute of limitations argument. *See Logerquist v. Danforth*, 932 P.2d 281, 287 (Ariz. Ct. App. 1996) ("[D]etermination of a claim's accrual date usually is a question of fact, with the inquiry centering on the plaintiff's knowledge of the subject event and resultant injuries, whom the plaintiff believed was responsible, and plaintiff's diligence in pursuing

the claim."); *see also Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (the question of whether a party knew or should have known of particular facts is generally inappropriate for resolution on summary judgment).

**IT IS ORDERED** that Defendants' motions for partial summary judgment (Dkt. ##37, 40) are **denied**.

DATED this 9th day of March, 2010.

David G. Campbell
United States District Judge